Ms. Hester, you've been up here about a zillion times. Whenever you're ready. May it please the Court. The government doesn't dispute that Trooper Waycaster seized Brian Bowman when he told him to remain in the patrol car while he questioned Alvarez, the passenger. Rather than contesting that the seizure occurred, the government relies on its theory that Bowman gave consent to the seizure when he said, OK, after the trooper said, I'm going to go ask him a question if you don't mind. OK. But the correct standard for determining whether I'm sorry. I am so confused by the seizure consent thing and what everybody is arguing. Your position is when was when was when did the seizure occur when he told Bowman to remain in the car? And before that, it was a consensual encounter. There was like a 40 second consensual encounter. Correct. OK. So the traffic stop ends. Then there's a 40 second consensual encounter. And then your position is that when he says sit tight, that transforms what had been a consensual encounter into a seizure. Correct. Through the I take it the two words sit tight. Well, it's really the combination of the two things of him telling him that he's going to question Alvarez, which is what the district court found. The trooper Waycaster informed Bowman he was going to question Alvarez and then he then he directed him. That happens during a consensual encounter. Who cares? Right. It's a consensual encounter. And the officer says, no, I'm going to question that guy. That wouldn't transform it into a seizure. Not that alone. But the fact that he's in the car and he's told to remain in the car. So it's a sit tight. It's the hang tight. Hang tight. Hang tight. Hang tight. OK. Right. Because the correct standard for determining whether when a police encounter becomes a seizure rather than consensual is whether a reasonable person would have felt free to leave or not. And the government's argument that the seizure is consensual if he consented to Waycaster's questioning Alvarez in the first place. But that wouldn't even make any sense if your theory is that the thing it's a consensual encounter that becomes a seizure at the moment the officer says hang tight. The fact that he had said OK before then, you think just makes no difference. It was consensual right up to the second when he said hang tight. Right. I agree with that. And I want to point out that under the government's theory, you know, once a person voluntarily engages in any encounter with police, he's consented to any seizure that would feel free to leave or to otherwise terminate the encounter. And the Supreme Court explained in Royer that any consensual aspects of a police encounter evaporate when a person is seized. So the district court correctly recognized that a reasonable person would not have felt free to leave when Waycaster told him that he was going to question Alvarez and directed Bowman to stay in the patrol car. So my concern and I'm sorry, I'll let you move off this in a second was I thought that the district court was sort of asking the wrong question and coming to the conclusion that the colloquy about questioning Alvarez was not enough to transition what had been a seizure into a consensual encounter. But that's not the right question. Right. It's whether a transition what had been a consensual encounter into a seizure. I think it could be either really. But I think that the I think the better argument is that that questioning transformed what had been momentarily a consensual encounter into a seizure. But I think it could be either. I mean, the traffic stop had clearly ended when the when the trooper gave him back his documents and they shook hands. At that point, the traffic stop was a naked hand. Significant that is that like a traffic stop was over when he gives him back his documents and then they have a little you think shaking hands is a common thing that they do at the end of their. I have no idea. I really don't. But I think if you if you listen to or if you watch the videotape, which you can't actually see the officer and Bowman while they're sitting in the car, you can only hear the exchange. But it's pretty clear from the exchange that Bowman understands that the So it's clear that that purpose is over. And from that point, if Waycaster is going to continue the discussion, he either has to have Bowman's consent or he has to have reasonable suspicion. And you think he did have consent for that 40 seconds? Probably so. Yeah. So when the officer tells him hang tight and then he says, OK, characterize the OK. The OK is just a confirmation. One argument is it's a consent. Right. So what's the other argument? Well, I think the other argument is, well, first of all, the district court found that there wasn't consent. The district court's findings are completely inconsistent with there being any consent because Waycaster informed Bowman. This is what the district court found, that Waycaster informed Bowman that he was going to question Alvarez and directed Bowman to remain in the patrol car without giving Bowman an opportunity to say no. So absent some demonstration by the government that this is clear error. And if you watch and listen to the videotape, you can see that that is supported by the evidence in the videotape. There's no consent to begin with. So the trooper did have to have reasonable suspicion in order to continue detaining Bowman at that point. I mean, Waycaster didn't have reasonable suspicion when he told Bowman to remain in the patrol car because in their totality, the factors that Waycaster articulated don't serve to eliminate a substantial portion of travelers. And he didn't demonstrate a connection between these factors and criminal activity. Instead, what he did was to make post hoc rationalizations attempting to make Bowman's behavior look suspicious. And the messiness of the car is an excellent example of this. What he said was there was fast food trash on the floorboard. There was a large suitcase in the backseat and clothes spread around the backseat. And there was an energy drink can in the console. But someone on a drug run or in a hurry, as the officer interpreted this to be, wouldn't have a large suitcase and loose clothing in the backseat. And in fact, police generally say that not having luggage is evidence that a person is transporting drugs. So the defendant's in a lose-lose situation. He's suspicious if he doesn't have luggage and he's suspicious if he is. And the presence of the fast food wrappers is simply too common to be suspicious. I cited the court a number of cases where courts have said that that is just way too common to lend any kind of reasonable suspicion. So the only reasonable inference that can be drawn from the suitcase and loose clothes along with the food trash is just that Bowman doesn't keep his car clean. And also he explained to the officer that he stayed at his girlfriend's house a lot, which is another, not in that context, but just explaining where he lived. And that's another reason why he would have had a suitcase in the backseat. Trooper Waycaster also focused heavily on what he called the nervous behavior of the two men. But this court has repeatedly warned against overplaying evidence of nervous behavior because most people are nervous when they're approached by police. And that would have particularly been the case in 2015 when this stop happened. Because at that time, deadly force used in police encounters had been in the news quite a bit after the shooting in rural highway. And the first thing that the trooper said when he walked up was, can I see your hands? So those circumstances would increase most people's nervousness about the encounter. And the government itself recognized that Bowman seemed calmer as the stop went on, which is how innocent travelers normally respond to a traffic stop. And finally, with respect to Alvarez's nervousness, the court should keep in mind that he's Hispanic. And the news circulating at the time would have made somebody who was a racial minority particularly nervous during a traffic stop. And furthermore, Alvarez's nervousness should not be a factor in determining reasonable suspicion about Bowman's seizure. Because it's not particularized as to Bowman. And I'm taking that from United States v. Black. So you're saying a passenger's nervousness cannot be added into the quantum of facts to determine whether or not there's a reasonable belief that drugs are in the car? As to Bowman, reasonable suspicion justifying Bowman's seizure in the trooper's car. What about in Pringle, didn't the Supreme Court say, you know, when it's the middle of the night and it seems like there's something funny going on in the car, you can kind of assume everyone's involved? I'm not sure. I'm not familiar with that case. I thought they could consider whatever they saw, if it was Alvarez or Bowman, either one. Big picture. Why would that be pertinent? But even then. He said he was more nervous than the average. And he was, I guess, acting funny and he was staring straight ahead. Well, again, the issue of whether someone is suspicious by not looking at the officer or looking at the officer, again, puts the person in a caption. You seem to be trying to stretch things when you say we can't consider how the passenger's acting. Well, fair enough. But even if you do consider how the passenger was acting in this case, I think you have to take into consideration his race and the facts of the time and the fact that racial minorities would be more nervous when being stopped by authorities. Does the time also cut the other way? Don't we sometimes say, well, it's 3 a.m. and that's a factor going toward reasonable suspicion? Oh, by time, I mean the time in history. Yeah, the era. Well, what about the time, the 3 a.m. time? I think it can, depending on what the officer sees. But most people traveling at 3 a.m. on the road are not engaged in illegal activity. That's true. But I was wondering whether it kind of, if you put it together with the vagueness about what exactly is going on, that that might be more unusual at 3 a.m. There was some vagueness about where the girlfriend lives and what exactly, which state she was in. And that when you put that together with it being 3 a.m. I think it can cut the other way as well, though, because it makes more sense that somebody would not have a good memory at 3 o'clock in the morning and gone to pick up his friend. I mean, who knows, maybe he had a fight with his girlfriend and he had to leave right then. I think it still could go either way. And what about all the business with the Craigslist cars, which did seem relevant to me, both really in two respects. One, that it is a little bit unusual to keep buying cars on Craigslist. And then this officer could kind of tie that to criminal activity. But also, if you just read the whole colloquy, it really sounds like Bowman keeps trying to explain, I just bought this car. I have no idea what's in this car. Don't come looking at me if you find drugs in this car. Like, his eagerness to get out what is going to be, what sounds like it's going to be a defense for when they find the drugs struck me as a little Well, actually, I don't think that's what he was doing at that point. I don't think that came out until after the seizure. But before the seizure, I think what he's saying is the reason I was weaving is because this car, I just, I'm unfamiliar with this car. That's what he was saying at that point. And I don't think that is particularly suspicious. But still, you know, what the officer was trying to say is having more than one car is consistent with being a drug dealer. But I thought it was buying cars off Craigslist. Well, it wasn't particularly buying cars off Craigslist. It was just having multiple cars. And most people who, I mean, I have three, most people will have multiple cars. That's just really, that's really common. And then the other thing I think that you were about to allude to was the fact that he had been laid off at the time. But, you know, Waycaster said that he thought that was suspicious. But he never asked Bowman when he was laid off, and Bowman said, I was just laid off. So he doesn't know whether he bought the car before or after. And also, it's an 18-year-old car. I mean, it's a cheap car. Someone who's been laid off. It was an old Lexus. It was a very old Lexus, yes. So someone who's been laid off still could afford to buy a car like that. The last thing I want to mention is forgetting the recent destination put in the GPS. That really doesn't distinguish him from a substantial portion of innocent travelers, because now that people are so reliant on GPS, almost everybody has it in their phone, and you actually don't even have to type a whole address to get it in there. Sometimes people just text you an address and you click on it. So you really might not know what the address is. And as far as not knowing for sure where the state line is located, I think the court can take judicial notice that this is a border county. Waycaster testified he wasn't very far from the border. It was a mile post three. That's just three miles above the border. But I think the court can take judicial notice of maps that show there are a lot of secondary rural roads in that area that crisscross the border. So it's not unreasonable for a person to not realize which side he's on at any particular time. So considered in the totality, the court's left with two men here nervous when they're stopped in the middle of the night on a rural highway in 2015 and asked to put their hands where the trooper can see them. And the Hispanic passenger seems more nervous than the white driver. The car's messy. The driver can't remember the address. He's just been directed by his GPS and he's lost his job, although it's not clear when that happened. And he has a cheap car he bought on Craigslist and has bought another cheap car in the recent past. Those factors together just don't distinguish Bowman from a substantial portion of innocent travelers. And Waycaster didn't demonstrate a connection between these facts and criminal activity. Thank you. Mr. Enright. Mr. Enright, I can tell you starting off, one of the problems you're going to have to deal with in your argument is the situation where the officer's told there are drugs in the car, but he's got to come up with his own reasons, come up with some reasons to justify his search of the car, which is not exactly your normal situation where a trooper stops someone for speeding and then these things come to light. I mean, he's looking for stuff. So with that preface, we're ready to hear your argument. I appreciate that, Your Honor. May it please the Court, Anthony Enright for the United States. I'll address your question head on, Your Honor. I think this Court should basically simply put the tip to the side. And the reason is because we told the District Court we're not going to rely on it. We told the Court the Court did not have to make a determination whether that tip was reliable. And I'm not going to come up here and say this Court should affirm based on the reliability of the tip. So I think the role that information plays in this case is... But I guess I have sort of a different question. I wasn't thinking that we could rely on the tip. My concern is that it's just an unusual set of facts where the officer testifies at the suppression hearing, right? Well, I didn't base the stop on the tip. I had this other stuff, but it's not like I forgot the tip. And so the question I have is do we... The way he was processing these factors, what he found suspicious, would he always find a messy car suspicious? Or did he find it suspicious here because he happened to know from the tip these guys were meth dealers? Is he a reliable narrator at the point at which he's already assuming because of the tip these guys are criminals? Your Honor, I'll have two answers to that question if you don't mind. The first I'd say is that he probably is a reliable narrator because he explained why each factor was suspicious without reference to his prior information. The second, and I think probably the more important answer, is that the reasonable suspicion inquiry is an objective inquiry. So whether the officer in that circumstance, the degree to which he was aware of or was considering that tip, is something this Court can ignore and look at the remaining facts and determine whether, as an objective matter, an officer in the position that Trooper Waycaster occupied would have had reason to have more than a hunch of ongoing criminal activity would be sufficient to warrant spending an extra minute to ask, or minute and a half, to ask Alvarez a question. Well, we don't even know that he would have stopped these people. Pardon me, Your Honor. We don't even know that he would have stopped these people absent the tip. No, Your Honor, and I think it's fair inference from the record that he was out there. There were several police officers out there waiting for Bowman to cross into North Carolina because of that tip. Independent of the tip, why would they stop him? Pardon me, Your Honor? Independent of the tip, what's the reason that jumps off this record, why they stopped the red Lexus? Speeding and crossing the fog line, both of which was ratified. Because they would have even pulled out to get him, so to speak, to check, to see, to follow him, absent this tip. It's correct, Your Honor. Your Honor, I do believe the subjective motivation for looking for a traffic violation and stopping... They're looking for this car, though. Yes, Your Honor. As soon as this car goes by, regardless of whether there's any indication that it's violating the law at that time, they're going to pull out to go get him. I think they would have pulled out to observe him, but Trooper Waycaster made clear... What was his speed? He was going 75 miles an hour in a 65 mile an hour zone. 65 mile an hour zone? Yes, sir, Your Honor. I thought it was 70 up through there. The officer testified it was 65 miles an hour, and that's uncontested. Lots of places, they don't even stop them for 10 miles over the line, over the limit. That is true, Your Honor. What I think the Supreme Court has made pretty clear is that the subjective motivation for a stop is irrelevant. If an officer observes a traffic violation, he has probable cause to initiate the stop. And I would also acknowledge that the defendant has not asserted that it was error to find that the stop was justified. You're conceding this was a pretextual stop and that's fine under Wren. Oh, sure. It was a pretextual stop. The subjective motivation was the information they had pursuant to the DEA, larger DEA investigation. And we're not relying on that information for the question that I believe is before the Court, which is whether he had reasonable suspicion. Is it possible, another thing that worries me, is it possible that because the officer had the tip, he knew these were, he thought he knew that these were drug dealers. Might that explain some of the nervousness in the car? Perhaps he approached them with a bearing or the kind of attitude one might bring to a stop of drug dealers rather than what one might normally bring to a traffic stop, and that might account for the unusual nervousness. See what I'm saying? I see that, Your Honor. You know what I think dispels that probably most clearly is probably the tape itself. I would certainly encourage the Court to look at it if it hasn't. It is a fairly routine encounter, and at least until Trooper Waycaster tells him he's going to run a drug dog around, it's pretty friendly. Also, you know, Trooper Waycaster did it pretty much by the book. He didn't accuse them of having drugs in the car. He asked, when he went to ask Alvarez questions, he didn't ask him about drugs. He specifically asked him about the question that was suspicious in his mind, where had you been? He limited it to that question and came back to the car. I do want to talk about that because I do agree. Here we have a seizure when, at the time, that Trooper Waycaster told Bowman to hang tight. But when Bowman consented to allow Trooper Waycaster to question Alvarez, he consented to remain in the vicinity when he did so. How do you get that? Well, he was sitting in the squad car at the time, and Trooper Waycaster said, do you mind if I go speak to him for a minute? He says, I'm going to speak to him, I have a quote, I'm going to ask him a question, if you don't mind, okay. And Bowman says, okay. That's consent, and the scope of that consent is measured by an objective observer. In the words of this court in Smith, the consent extends to its foreseeable circumstances. And the foreseeable circumstances are he's got to stay there while they ask the question because he can't get off and drive off in the car that contains the passenger he just consented to. He has to allow the officer to question, and it's not reasonable to think he could just wander off on the road. So when Trooper Waycaster says, just hang tight right there, sure, that's a seizure, but it's a consensual seizure. It's a seizure to which he consents. Consensual seizure, isn't it? If it's a seizure, I thought seizure meant it's not consensual. Don't you mean it's a consensual encounter? You think it's a consensual seizure? Your Honor, it is a consensual seizure. It is an encounter that is consensual. There's a context in which they're sort of at opposite ends of the spectrum. When you have a police officer and a citizen on the street and he asks them a few questions, sometimes the cases describe it in terms of, is it a consensual encounter or a seizure? But a seizure is lawful and permitted by the Fourth Amendment if the defendant consented to that seizure. I thought the definition of a seizure was the person doesn't feel free to leave. That is correct, but a defendant can... I can't consent not to feel... It may sound like just semantics, but I just don't understand your argument. I don't understand how something can be a consensual seizure, so I'm troubled by the fact that... Why was he saying there was a seizure when he said, hang tight, but that's okay because it was consensual? Yes, Your Honor. Why was he just saying there wasn't a seizure, it was consensual? Well, because I do think it's a fair inference to say that he was not free to... did not feel free to leave during that minute when he's sitting in a squad car and Trooper Waycaster is ahead. Trooper Waycaster said that when he communicated, sit tight right there, he was telling him he does have to stay. So I think it is fair to say it's a seizure. Consensual seizures happen fairly often, although I don't know that they always have legal significance. Is that term used in the case law very often? Consensual seizure, does that arise in the... United States v. Smith, Your Honor. In the Fourth Amendment jurisprudence of this circuit? United States v. Smith, Your Honor. There's a lot of those Smith cases. This one's from 2005, it's in our brief. About everything. 395, Fed Third, 516. The defendant goes up to a... They call it a consensual seizure? Yes, I don't know if they use the... He says this is a consensual seizure. It was a seizure that the court found reasonable because of... Judge Harris was asking you about it a little bit. I'm just trying to test it. But you've got a case here, you cited it. Yes, Your Honor. We'll see whether we can get that hold up. Certainly, Your Honor. The defendant went up... Who wrote that one? Who used that? Was that one of a... Pardon me, Your Honor? That consensual terminology, the consensual seizure terminology. It was Judge Ludig. Judge Ludig. I think you and Judge Niemeyer joined the opinion. I was right there. I joined it. There you go. That's the kind of stuff you need to point out. You've said it yourself. But so you were conceding there was a seizure, that the phrase hang tight transformed what had been a 40-second consensual encounter into a seizure. So your argument depends on us finding that there is a seizure that was consensual. Yes, Your Honor. You've given us the seizure part. Now we have to figure out whether we think there's such a thing as a consensual seizure. Yes, Your Honor. Okay. I do think the court has already figured that out in Smith. Well, to be a consensual seizure, something has to have happened that the officer didn't intend. Because the officer says, I intended to have told him he would stay there, don't get up. Yes, Your Honor. Well, the defendant... Then somehow because he said okay, that was an agreement. To do... That was an agreement. Well, I don't think so, Your Honor. The defendant could have, probably would have had to withdraw his consent to leave. I thought the okay was the consent. It was. And what he was agreeing to was, I'm going to stay put for a couple of moments while you answer the question. Because you have to stay put for that couple of moments, it's a seizure. But it wasn't a response to a question, was it? The officer didn't say, would you hang tight? I'm going to ask him a question, if you don't mind, okay. And Bowman says okay. The way Bowman responds, if you look at the tape, I think suggests that he understood it as a question or a request, which he could have said okay or not. So your argument is that at that moment there was consent? Yes, Your Honor. Or when does the seizure take place? A few seconds later when Trooper Waycaster says, just hang tight right there. And Bowman again says okay. But the okay does not indicate consent. No, Your Honor, the okay does indicate consent. I'm not at all. Why isn't it consensual? Why is it a seizure? Then where's the seizure? I don't believe that it could. I'm sorry, I don't mean to talk over you. No, no, I'm just so, I'm just, I'm genuinely. You think that when he says okay to the hang tight, he is consenting to hang tight? Yes. Then why is it a seizure? Well, he had, I'm sorry. I'm saying he consented earlier to allow Trooper Waycaster to talk to Alvarez. And by doing so, he agreed to stay put for a few moments. He agreed he would not be free to leave. If he agreed to stay put, why is it a seizure? I don't believe that a seizure means that there is no consent. And perhaps I'm wrong about that, but I don't believe so. Yes, the, I believe the. What makes it a seizure in your mind in the light of his consent to stay in the car? What is it that makes it a seizure? A seizure is the lack of freedom to leave under the circumstance. He would have had to say, Trooper Waycaster, while you're talking to Alvarez, I don't want to sit here anymore. I withdraw my consent. He couldn't have realistically just gotten out of that car and walked away. I mean, I think a reasonable person would feel that way under the circumstances. But he consented to that, and I think it's very, it's not different from when someone consents to a pat-down search. You consent to those few seconds it's going to take to hold you there. Or in the case of Smith, a CIA checkpoint, he agreed to go to the, he consented to go to the CIA checkpoint when he drove up to the CIA checkpoint after asking for directions. He then had to sit there for a moment while they confronted him with guns and asked him questions. He consented. He was seized. He couldn't just drive off. But he consented to that seizure. A defendant can consent to being arrested. Or a subject can consent to being, you could have a consensual arrest under what you're saying too. I suppose a defendant could consent to an arrest. A defendant can turn himself in. But it seems like, I mean, normally they just call it an arrest. They might voluntarily show up at the police station or the FBI office or something. After they get an indictment, a U.S. attorney can call a lawyer. Would that be a consensual arrest? I think so, Your Honor. It's rare that it comes up in litigation, Your Honor, because I think usually you turn yourself over, you don't then contest. There's not usually a fight about whether you're arrested or not. Here we have that situation. I don't think it's uncommon, but I do think the litigation issue doesn't arise under these circumstances that often. If the consent occurred when Bowman says, sorry, I have to talk to Alvarez, then why did the officer tell him to hang tight? If that was implicit in the consent to go talk to Alvarez, why did the officer tell him to hang tight? Doesn't that mean the officer doesn't think the consent to go talk to Alvarez would require him to stay in the car? Probably, Your Honor. And if you look at the exchange, I don't think there's any surprise from Bowman when he asked for that. I think the police officer just wanted to make sure he understood what he needed to do, make doubly sure. But the way Waycaster responds to whether you consider that a consensual seizure or a consensual encounter, I think the ultimate question is whether he engaged in voluntary consent. And the district court, I think, kind of skipped that question, basically said because there was a seizure. The district court did not, contrary to what I think the defense said, find that Bowman didn't give voluntary consent. The district court found that we could not rely on Bowman's consent and didn't engage in the question, didn't go through any analysis of the factors. And this court has found, Smith is one example. I think the district court didn't understand the theory of the consensual seizure. I think what the district court said was this is a seizure because he didn't feel free to leave. And I think the district court maybe hadn't read the Smith case and thought, as I had until right now, that if it was a seizure, it was not a consensual encounter. But you think it can be a little bit of both. That was fair, Your Honor. I do. The district court, I think the district court attached more significance to the term sit tight than we anticipated in advance of that whole thing. I'm surprised you're not just arguing that sit tight was just kind of a colloquialism that didn't particularly mean anything under these circumstances. It was a consensual encounter as of 40 seconds ago. And when someone says sit tight, that's just, you know. I think the language itself may well have been, but I think the punchline is that when Bowman said, okay, I don't mind if you question Alvarez for a minute and a half, he consented to that exchange. And if it's a seizure, consent makes it a reasonable seizure. And if it's a consensual encounter, then it also doesn't violate the Fourth Amendment. So I think the question is, if the record is clear, as I think it is, that when Bowman said, okay, he was consenting to allow Waycaster to interview Bowman or speak to Bowman for a minute, his doing so, Waycaster's talking to Alvarez didn't violate the Fourth Amendment. Now, I want to speak briefly about the reasonable suspicion finding, because I think that is correct. It's not just a random assortment of facts, Your Honor. When Bowman told Trooper Alvarez that he had just come from 25, 30 minutes back after picking up Alvarez from his girlfriend's house, Trooper Waycaster had reason to believe he wasn't being entirely truthful with him. He said he thought he was coming from North Carolina, even though he had just crossed the border. That's unusual because it suggests he doesn't know where he was. And he said the address was in his GPS, which is even more unusual because it's difficult to enter an address in the GPS if you don't know the state you're talking about. And against that background, he had seen, when he saw that, he did that again. He saw, he heard those statements against the background of two suspects or subjects who exhibited unusual nervousness. He testified their nervousness was unusual even for people who were the subject of traffic stops. And heard this repeated discussion of Bowman's practice of buying cheap cars off Craigslist. And he said that is suspicious and it connects people to drug activity for two reasons. First, it's a regular practice of drug dealers to use regular cars. That allows them to disclaim knowledge of what's in the car they recently acquired. And the second, it suggests he has an income stream from something other than his legitimate employment because he said, I was recently laid off, but he's still buying cars. Now, are all of those individually consistent with lawful activity? Sure. But together, they warrant more than a hunch that reasonable activity may be afoot and justify the officer asking a couple of questions of Alvarez to allay that suspicion. And in this case, it didn't allay that suspicion but confirmed it. Well, under the circumstances, he wasn't trying to allay that suspicion, right? Because he had the tip. He did have the tip, Your Honor, but I would note that's what he asked him. He articulated specifically, my concern is you're not, he wasn't telling me the truth and asked Alvarez not about drugs. He didn't go up to Alvarez and say. No, I understand that, but he, I just think it's under the circumstances. I know that that language comes from Terry. You take these steps to allay your suspicion, but you already conceded that's not what's going on here. That is fair, Your Honor. There's already a thumb on the scales. Yes, Your Honor. He's trying to confirm his suspicions. He's thinking he'll get a different answer, and now, bingo, he's finished. That is certainly true, Your Honor. But it is an objective inquiry, and in that case, in that circumstance, the answer established an objectively reasonable suspicion, ongoing criminal activity. I see my time's up. I've already gone over. If the Court has no further questions, I will sit down. Okay. Thank you. Ms. Hess, your reply. I'll start with the consent issue. There's two reasons why the government's consent issue just doesn't hold water, and the first one is even if the consent were the standard, the government would have to show clear error because the government did make that consent argument in the district court, and what the district court specifically found was, and it's on page 275 of the joint appendix, was that Trooper Waycaster informed Bowman that he was going to question Alvarez and directed him to remain in the patrol car without giving him an opportunity to say no, and the government's made no attempt to demonstrate that that finding, in fact, is clearly erroneous, and it's not. It's supported by the video in this case, and with respect to whether telling Bowman to hang tight is a seizure or not, I'd direct the Court to look at the Richardson case, which is cited in the Jones case, which I discuss in the brief, and in that case, the exact same language was found to constitute a seizure. With respect to the Smith case, Smith is not relevant because in that case, that is a very peculiar case because the driver in that case was in a restricted area of a CIA compound, and he was subject to the customary security precautions that were required at that time of the night at the entrance to that kind of protected facility, and applying Smith to the facts of this case would be inconsistent with the Supreme Court's decision in Florida v. Bostick and Florida v. Royer, as well as this Court's en banc decision in Lattimore. Smith may also be wrong. Probably the correct analysis in Smith would have been whether a person has a reasonable expectation of privacy under those circumstances rather than consent, but it says what it says, but those facts are entirely distinguishable from the facts in this case. With respect to the significance of what Waycaster had in his mind, I think that the way to consider that is to look at the reasons that he gave and to consider whether those are post hoc rationalizations meant to support what he ultimately found, and I think that even in their totality, those circumstances are legitimately post hoc rationalization rather than something that would have made a reasonable officer at the time be suspicious that these men were on a trip carrying drugs. Judge Harris, you asked whether the pretextual nature of the stop might have affected the nervousness of the driver and the passenger, and I think that even though Waycaster was using a friendly tone of voice, he did do things during that stop that would amp up the nervousness of the people in the car, whether that was because of his pretext or because it was nighttime, I don't know, but he did two things that seem unusual for a traffic stop. The first is to walk up and immediately tell the occupants of the car to put their hands where he can see them, and the second thing was to take Bowman out of the car and pat him down and then put him in the passenger seat of his car. I think having been patted down would also make a person more nervous. That would make a reasonable person feel like he was suspected of being a criminal, basically. So that is one way in which the pretext affected the men's reaction to the stop. Okay. Thank you. Thank you, Ms. Hester. Do you want to take a break? Yeah. Okay. All right. Will, I come down and greet the council and then take a five- or ten-minute break.
judges: William B. Traxler Jr., Robert B. King, Pamela A. Harris